UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:14-CV-00198-TBR

CINDY FLICK                                                                                           Plaintiff

v.

MERCY HEALTH PARTNERS –
LOURDES, INC.,                                                                                     Defendant

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on several motions. Defendant Mercy Health Partners – Lourdes, Inc. has filed a Motion to Dismiss Amended Complaint. (Docket No. 23). Plaintiff Cindy Flick filed a Motion to Amend/Correct Amended Complaint, (Docket No. 24), which the Court interprets both as her reply to Defendant's Motion to Dismiss and as a Motion to Amend. Finally, Defendant filed a Motion to Strike. (Docket No. 6). These matters are now ripe for adjudication. For the following reasons, the Court will **GRANT** Plaintiff's Motion to Amend, **GRANT IN PART and DENY IN PART** Defendant's Motion to Dismiss, and **GRANT IN PART and DENY IN PART** Defendant's Motion to Strike.

## BACKGROUND

Plaintiff Cindy Flick ("Flick"), proceeding *pro se*, brought this litigation against her previous employer, Mercy Health Partners – Lourdes, Inc. ("Lourdes"). (Docket No. 19). Flick was hired in January of 2011 as a Laboratory Section Supervisor. Her duties included "oversight of a wide variety of administrative, fiscal and technical activities and ensuring the efficient operation and regulatory compliance of the clinical laboratory . . . ." (Docket No. 15-2). Flick alleges that in March of 2013, she became aware that Lourdes was "purposely holding breast

1

tissue biopsy specimens for 14 days after patient discharge before sending them to Agendia (an outside reference lab)." *Id.* Agendia performs genetic testing which identifies the type of cancer present in the tissue. Flick alleges that the 14 day hold on breast tissue was done in order to "circumvent the Medicare Date of Service ("DOS") rule which specifies that any laboratory services performed within 14 days of an inpatient admission would be lumped into the predetermined DRG payment . . . . Anything after 14 days post discharge is treated as a separate encounter and can be billed separately." *Id.* Flick alleges that this meant that Agendia could bill Medicare, and not Lourdes, for the $9,325 cost of the testing, leaving Lourdes with the full reimbursement payment. She alleges that this procedure violated the Medicare Claims Processing Manual and could adversely impact the health and welfare of breast cancer patients.

Flick became aware of this activity in March of 2013 and informed her direct supervisor Mohammad Khan, the Laboratory Director. Flick alleges that Khan denied knowledge of arrangement and made no effort to change it. In April of 2013, Flick reported the activity to Elizabeth Snodgrass, the Corporate Compliance Officer. Flick alleges that Snodgrass said she would investigate it, and shortly afterwards the practice was discontinued.

Further, Flick alleges that Khan attempted to obtain discounted pricing from Agendia by adding a clause to a proposed contract that required the lab to waive the charges if testing was ordered on inpatient or same day surgery. Flick alleges that Agendia sales representative Renis Baker met with Flick and said he was having trouble with Khan. Flick alleges that Baker indicated that Lourdes had unpaid bills, and Baker also sent Flick a copy of the proposed contract via e-mail. Flick met with Khan around July 30, 2013 and told him that she believed the stipulation regarding free services was a potential violation of Anti-Kickback regulations. Flick alleges that Khan responded that it was not her business. Additionally, Flick discovered that

2

Agendia had written off approximately $14,000 worth of services on two patients, one of whom Lourdes had already billed Medicare for.

In August of 2013, Flick met with Jeff Jones, Vice President of Operations; Flick reported that Khan had solicited and accepted free services and supplied Jones with documentation. Flick alleges that she heard back from Jones via e-mail on September 6, 2013, and that Jones said he did not have time to deal with these issues and that Jones supported Khan's decisions.

On October 3, 2013, Flick was suspended pending termination. The reason given for her termination was insubordination. Prior to her termination, Flick's four previous evaluations from Khan ranked her as an "above average" employee. Flick alleges that she was discharged in retaliation for reporting the activities described above.

In her first amended complaint, Flick alleges that the defendant violated KRS 216B.165 for unlawfully terminating her, KRS 205.8461 for soliciting kickbacks, 205.8463, 205.8465, and 18 USC 1031. In her second amended complaint, Flick voluntarily dismissed her claims under 31 USC 3729-3733 and 42 USC 1320(a)-7(b)(b). (Docket No. 24-1). Thus, Defendant's Motion to Dismiss is GRANTED as to those two claims.

## STANDARD

The Federal Rules of Civil Procedure require that pleadings, including complaints, contain a "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a claim or case because the complaint fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b). When considering a Rule 12(b)(6) motion to dismiss, the court must presume all of the factual allegations in the complaint are true and draw all reasonable inferences in favor of the nonmoving party. *Total*

*Benefits Planning Agency, Inc.*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). "The court need not, however, accept unwarranted factual inferences." *Id*. (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

Even though a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Instead, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (citations omitted). A complaint should contain enough facts "to state a claim to relief that is plausible on its face." *Id*. at 570. A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). If, from the well-pleaded facts, the court cannot "infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 1950 (citing Fed. R. Civ. P. 8(a)(2)). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*.

In addition, federal courts hold *pro se* pleadings to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). However, "[o]ur duty to be 'less stringent' with *pro se* complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted). Accordingly, this Court is not required "to explore

4

exhaustively all potential claims of a *pro se* plaintiff," as this would "transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).  Only well-pled factual allegations contained in the complaint and amended complaint are considered on motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *See Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997).

## DISCUSSION

### 1. Claims under KRS 205.8461 and KRS 205.8463

Flick argues that Lourdes violated both KRS 205.8461 and KRS 205.8463.  KRS 205.8461 states that:

> . . .[N]o provider shall knowingly solicit, receive, or offer any remuneration (including any kickback, bribe, or rebate) for furnishing medical assistance benefits or in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any goods, facility, service, or item for which payment may be made pursuant to Title XIX of the Social Security Act.

KRS 205.8461(1).  It provides for criminal penalties for any person who violates the section. KRS 205.8461(3).  Next, KRS 205.8463 states that:

> No person shall knowingly or wantonly devise a scheme or plan a scheme or artifice, or enter into an agreement, combination, or conspiracy to obtain or aid another in obtaining payments from any medical assistance program under this chapter by means of any fictitious, false, or fraudulent application, claim, report, or document submitted to the Cabinet for Health and Family Services, or intentionally engage in conduct which advances the scheme or artifice.

KRS 205.8463(1).  It also provides for criminal penalties.  KRS 205.8463(5).

Lourdes argues that neither statute contains a private cause of action.  (Docket No. 23). In response, Flick added KRS 446.070 to her Second Amended Complaint.  (Docket No. 24). KRS 446.070 states that:

5

> A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation.

Flick alleges that she was discharged after reporting violations of KRS 205.8461 and KRS 205.8463 to her supervisors. However, she does not allege any injury she suffered as a result of Lourdes's alleged violations of these two statutes. Thus, her claims under KRS 205.8461 and KRS 205.8463 are dismissed.

### 2. Claim under KRS 205.8465

Flick alleges that she was retaliated against by Lourdes after reporting Lourdes's violations to her supervisors. KRS 205.8465 states:

> Any person who knows or has reasonable cause to believe that a violation of this chapter has been or is being committed by any person, corporation, or entity, shall report or cause to be reported to the state Medicaid Fraud Control Unit, or the Medicaid Fraud and Abuse hotline, the following information . . .
>
> No employer shall, without just cause, discharge or in any manner discriminate or retaliate against any person who in good faith makes a report required or permitted by KRS 205.8451 to 205.8483, testifies, or is about to testify, in any proceeding with regard to any report or investigation. Any individual injured by any act in violation of the provisions of this subsection shall have a civil cause of action in Circuit Court to enjoin further violations, and to recover the actual damages sustained, together with the costs of the lawsuit, including a reasonable fee for the individual's attorney of record.

KRS 205.8465(1); 205.8465(3). Lourdes argues that this statute does not apply to employees who report violations to their supervisors. (Docket No. 27). Rather, Lourdes notes that it prohibits retaliation against an employee who reports or causes activity to be reported to the state Medicaid Fraud Control Unit or the Medicaid Fraud and Abuse hotline. *Id.* In response, Flick argues that she met the requirements of the statute by informing her immediate supervisor, Khan, that the solicitation of free services was illegal, and by elevating her reporting by notifying Vice President Jeff Jones. She alleges that her actions fit into the statutory language "cause to be

6

reported," as Lourdes encouraged its employees to report to their supervisor or the Corporate Compliance officer. Flick also notes that she went to Snodgrass, the Corporate Compliance officer, in making her first report.

Flick cites *to Follett v. Gateway Regional Health Syst., Inc*., 229 S.W.3d 925 (Ky. App. 2007). In *Follett,* the plaintiff "testified that she advised members of her staff to report either directly to Medicaid, or to the hospital's corporate compliance officer, their suspicions of billing irregularities in the hospital's emergency room." *Id.* at 929. The court found that "genuine issues of material fact exist as to whether [the plaintiff] was engaged in a statutorily-protected activity when she advised her staff members to report the matter." *Id.* at 930.

On the other hand, Defendants cite to *Miracle v. Bell County Emergency Medical Services*, 237 S.W.3d 555 (Ky. App. 2007). In *Miracle*, the plaintiff "admitted in his deposition that his reports of wrongdoing were limited to oral complaints to Broughton, and 'probably . . . to some ER staff maybe possibly.'" *Id.* at 559. The court found that because the plaintiff "admittedly made no timely report of the alleged fraud or abuse to a statutorily-designated authority, he does not fall within the whistleblower exception to the terminable at-will doctrine." *Id.*

Flick alleges that she caused the activity to be reported, by bringing it to the attention of various supervisors, according to instructions provided in her employment manual and training. Under the standard required for a Motion to Dismiss, the Court finds that Flick has alleged sufficient facts to support her claim under KRS 205.8465. Thus, the Motion to Dismiss is denied on this claim.

### 3. 18 U.S.C. § 1031

Flick brings a claim under 18 U.S.C. § 1031, which creates liability for "[w]hoever knowingly executes, or attempts to execute, any scheme or artifice with the intent-- (1) to defraud the United States; or  (2) to obtain money or property by means of false or fraudulent pretenses, representations, or promises . . . ." 18 U.S.C. § 1031(a).  It provides a remedy for parties injured:

> Any individual who--
>
> (1) is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by an employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of a prosecution under this section (including investigation for, initiation of, testimony for, or assistance in such prosecution), and
>
> (2) was not a participant in the unlawful activity that is the subject of said prosecution, may, in a civil action, obtain all relief necessary to make such individual whole. Such relief shall include reinstatement with the same seniority status such individual would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorney's fees.

18 U.S.C. § 1031(h).  Lourdes argues that Flick's actions were not "in furtherance of a prosecution" as required by the statute.  In response, Flick argues that "her reports to the hospital compliance officer could be construed as furtherance of a possible prosecution, as the retaliation clause includes retaliation for "investigation of . . . a potential prosecution." (Docket No. 24).

In *Mattes v. Johns Hopkins University*, 139 F.3d 891 (4th Cir. 1998), the plaintiff conceded "that he never contacted anyone, except his supervisor concerning his allegations. Section 1031(h) requires the protected conduct be in furtherance of a prosecution. Mattes never reported any of the alleged misconduct to any federal agency and never provided any assistance in furtherance of a prosecution." *Id.* Similarly, Flick's conduct was not undertaken "in

8

furtherance of a prosecution." Thus, the motion to dismiss is granted as to her claim under 18 U.S.C. § 1031.

4. **KRS 216B.165**

Flick brings a claim under KRS 216B.165, which states that:

> Any agent or employee of a health care facility or service licensed under this chapter who knows or has reasonable cause to believe that the quality of care of a patient, patient safety, or the health care facility's or service's safety is in jeopardy shall make an oral or written report of the problem to the health care facility or service, and may make it to any appropriate private, public, state, or federal agency.
> . . .
> No health care facility or service licensed under this chapter shall by policy, contract, procedure, or other formal or informal means subject to reprisal, or directly or indirectly use, or threaten to use, any authority or influence, in any manner whatsoever, which tends to discourage, restrain, suppress, dissuade, deter, prevent, interfere with, coerce, or discriminate against any agent or employee who in good faith reports, discloses, divulges, or otherwise brings to the attention of the health care facility or service the circumstances or facts to form the basis of a report under subsections (1) or (2) of this section. No health care facility or service shall require any agent or employee to give notice prior to making a report, disclosure, or divulgence under subsections (1) or (2) of this section.

KRS 216B.165. This statute does not set out a civil remedy that would allow Flick to recover from Lourdes. Rather, Flick's ability to bring suit "comes pursuant to KRS 446.070, which states that '[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation.'" *Foster v. Jennie Stuart Medical Center, Inc.*, 435 S.W.3d 629, 634 (Ky. App. 2013).

Lourdes argues that "Plaintiff did not plead facts sufficient to show any such attempt at dissuasion by Lourdes. Furthermore, Plaintiff's Amended Complaint alleges that she reported her suspicions internally at Lourdes numerous times, making it apparent that she was in no way dissuaded from reporting." (Docket No. 23). Flick responds that Lourdes "sought to discourage

9

her by ignoring her complaints, and to suppress, deter and interfere with her ability to make problems for them by suspending and then terminating her employment." (Docket No. 24).

At this stage, Flick sufficiently alleged that she reported on practices affecting patient safety. In addition to other allegations, Flick stated that Khan told her that a particular topic was not her business, and that Jones told her he did not have time to deal with her feedback. Thus, Flick provided significant allegations of being "discourage[d], restrain[ed], suppress[ed], dissuade[d], deter[red], prevent[ed], interfere[d] with, coerce[d], or discriminate[d]." The Motion to Dismiss is denied for this claim.

### 5. Wrongful discharge claim

Finally, Flick alleges a common law wrongful discharge claim. According to *Grzyb v. Evans*, 700 S.W.2d 399, 402 (Ky. 1985), "an employer cannot discharge an employee for a reason contrary to a fundamental and well-defined public policy as evidenced by existing law." *Id*. Defendants state that "the only relevant statutes concerning Plaintiff's alleged wrongful discharge claim are the previously discussed KRS 205.8456(1) and 18 U.S.C. § 1031" both of which have been dismissed. (Docket No. 27). However, one can bring a claim of wrongful discharge based on a violation of KRS 216B.165. *See Foster v. Jennie Stuart Medical Center, Inc.*, 435 S.W.3d 629, 635 (Ky. App. 2013). Thus, the court will deny the Motion to Dismiss on this claim.

In summary, the Court will GRANT the Motion to Dismiss for the following claims: 31 USC 3729-3733; 42 USC 1320(a)-7(b)(b); KRS 205.8461; KRS 205.8463; and 18 U.S.C. § 1031. The Court will DENY the Motion to Dismiss for the following claims: KRS 205.8465; KRS 216B.165; and common law wrongful discharge.

### 6. Motion to Strike

Lourdes filed a Motion to Strike, (Docket No. 6) paragraphs 4, 5, 18, 19, 20, and 21 from Flick's First Complaint (Docket No. 1-1), arguing that they are "immaterial" and "redundant. The Court will GRANT the Motion to Strike as to paragraphs 18, 19, and 21, and will DENY the Motion as to paragraphs 4, 5, and 20.

## CONCLUSION

For these reasons, and consistent with the Court's conclusions above,

IT IS HEREBY ORDERED that:

1) Plaintiff's Motion to Amend, (Docket No. 24), is **GRANTED**;

2) Defendant's Motion to Dismiss, (Docket No. 23) is **GRANTED IN PART and DENIED IN PART**;

3) Defendant's Motion to Strike, (Docket No. 6), is **GRANTED IN PART and DENIED IN PART**.

"
"
ee&lt;"Rnckpvkhh'"rtq"ug
""""""Eqwpugn